# East St. Louis Connecting Ry. Co. v. Calvin Reames.

1. VERDICTS—*Misapprehension, Passion and Prejudice.*—Where there is evidence to sustain a verdict, if the jury believe the witnesses, and it has the sanction of the trial judge upon an application for a new trial, the Appellate Court is not prepared to say that it was the result of misapprehension, passion and prejudice.

2. PLEADING—*Different Grounds of Recovery.*—A plaintiff may aver in his declaration as many grounds of recovery as he sees proper, but it is not necessary to prove all that is alleged; it is sufficient to prove enough of the negligence charged to make out a case.

3. SPECIAL FINDINGS—*When Not Inconsistent with the General Verdict.*—Under a declaration alleging that the defendant "negligently and wantonly" caused the injury, a general verdict upon proof of negligence

East St. Louis Connecting Ry. Co. v. Reames.

alone is not inconsistent with a special finding that the defendant did not " willfully or wantonly injure the plaintiff."

4.   SAME—*Duplicity.*—A declaration averring two causes of action in one count may be bad on demurrer for duplicity, but when the general issue is plead, the plaintiff is entitled to prove either cause of action alleged.

5.   MASTER AND SERVANT—*Scope of Liability.*—A master is responsible for the acts of his servant when done within the scope of his authority, but if the act is done while the servant is at liberty from his service and is pursuing his own needs exclusively, it is otherwise.

6.   SAME—*Liability for the Acts of the Servant.*—When the servant is allowed by his master to combine his own business with that of his master. or even to attend to both at substantially the same time, no mere inquiry will be made as to which business the servant was actually engaged in when a third person is injured by his negligence, but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master in the act, the negligent performance of which caused the injury.

7.   WORDS AND PHRASES—*Locomotive is a Car.*—A locomotive is a car within the meaning of an ordinance regulating the speed of railroad trains within the limits of a city.

8.   DAMAGES—*Sixty-Five Hundred Dollars Held Not Excessive.*— Plaintiff was struck and run over by a locomotive and his left leg severed from his body, his back was dislocated, causing spinal affection, etc. *Held,* that $6,500 was not excessive.

**Trespass on the Case,** for personal injuries.   Appeal from the Circuit Court of St. Clair County; the Hon. ALONZO S. WILDERMAN. Judge, presiding.   Heard in this court at the August term, 1897.   Affirmed.   Opinion filed March 1, 1898.

CHARLES W. THOMAS, attorney for appellant.

A master is not liable for the act of his servant unless it was done for the purpose and as a means of doing what the servant was employed to do.   An act done by a servant while engaged in his master's work, but not done as a means for the purpose of performing the work, is not deemed to be the work of the master.   If a servant deviates or departs from his employment and engages in affairs of his own the master is not liable.   Monographic Notes to Goodloe v. Memphis, etc., R. R. Co., 54 Am. St. Rep. 71 *et seq.*

So a railroad company was held not answerable for stock killed by one of its locomotives in use at the time by a servant of the company for his own purpose and outside the

line of his service.   Cousins v. Hannibal, etc.; R. R. Co., 66 Mo. 572.

And when a railroad station agent was charged with the duty of exploding torpedoes for the purpose of signaling trains, the railroad company was held not to be liable for injuries inflicted upon a bystander when the agent exploded the torpedoes for his own amusement.   Smith v. New York C. & H. R. R. R. Co., 78 Hun, 524.

The master is not answerable for the act or neglect of his servant, when doing something the master has not ordered done, if he has not authorized the servant to exercise a discretion in determining what to do.   Notes to Goodloe v. Memphis, etc., R. R. Co., 54 Am. St. Rep. 80.

M. Millard and F. C. Smith, attorneys for appellee; James M. Dill, of counsel.

A master is responsible for the acts of his servant when done within the scope of his authority, actual or apparent, and this is so notwithstanding there may be private instructions which are intended to limit his implied powers.   The scope of their employment is what it appears to be to third persons.   Lake Shore & M. S. v. Brown, 123 Ill. 162.

As to the contention that the plaintiff can not recover without showing the injury was wantonly inflicted we refer to the following as a sufficient answer:   Illinois Steel Co. v. Schymanowski, 162 Ill. 458; New York C. & St. L. R. R. Co. v. Blumenthal, 160 Ill. 40; Weber Wagon Co. v. Kehl, 139 Ill. 656; City of Rock Island v. Cuinely, 126 Ill. 408; Roth v. Eppy, 80 Ill. 283.

Mr. Justice Worthington delivered the opinion of the Court.

The declaration avers that the appellant was operating a railroad in the city of East St. Louis, and that an ordinance in the city required all freight locomotives and cars to be run at a speed not to exceed six miles an hour, and that the bell should be ringing constantly while running on any track within the city limits; that plaintiff was passing over

East St. Louis Connecting Ry. Co. v. Reames.

Front street in the said city, with due care and diligence, and that defendant, without ringing the bell or sounding the whistle, negligently and wantonly ran and drove said locomotive against plaintiff with great force, at a high and dangerous rate of speed, to wit, twenty miles an hour, by means of which plaintiff was struck and run over by the locomotive, and his left leg severed from his body. It avers that he was also thereby injured in his head, spine and back and other parts of his body; that the injuries are permanent; that he was unable to attend to his vocation, and incurred great expense, to wit, $500, to his damage of $15,000. Defendant pleaded the general issue. Judgment was recovered for $6,500.

The accident occurred on Front street in East St. Louis. This street is sixty feet wide and runs north and south. On the east side of the street there is a sidewalk ten feet wide. West of this sidewalk there is a paved strip thirty feet wide, bounded on each side by curbing. West of this paved strip is an unpaved portion upon which there is one track and the east rail of another track of appellant's road. The west rail of this second track is within six inches of the west line of the street. The distance between these two tracks is eight feet and ten inches. Appellee ran a boarding-house, and was in the habit of taking dinner to Hart, one of his boarders who was employed on one of appellant's engines. On the 13th of November, 1895, a rainy day with a strong wind, appellee, hunting for Hart to give him his dinner, and not knowing exactly where he was, crossed over the paved part of Front street, first walked south and then turned and walked north, between the two tracks, looking for the engine where Hart was to be found. Appellant's road is a terminal road over which switch engines, with and without cars, are frequently passing. As appellee walked north, a switch engine, on which were five of appellant's employes on their way to dinner, came north on the west track behind appellee and struck him as he walked between the tracks, or just as he turned to the west track, the evidence conflicting on this point.

The conflict of testimony, both as to rate of speed and as to ringing of the bell is sharp, and can not be explained. It is plain that the appellee was not a trespasser, the accident occurring on a street of the city. The engineer and fireman of the engine that struck appellee were examined as witnesses, but, singularly, neither of them was asked or testified as to the speed of the engine. The switching crew, consisting of the fireman and two helpers were riding on the engine on their way to dinner. They testified that its speed was not over five miles an hour. Rowland, one of the crew, upon cross-examination, said : " It might have been going as fast as a slow horse could run." Sweeney, the fireman, testified that " A speed of five or six miles an hour could not throw anybody in the air." Shea, the yardmaster, was four hundred feet north of the engine, looking at it as it came toward him. He testified that the speed was not over five miles an hour, but it is evident that his position was not the best for estimating its speed.

For appellee, Robison, located nearly opposite the place where the accident occurred, states the speed at about forty miles an hour; that he "happened to be looking right at the place when the accident happened. Just as they hit the man, I heard somebody shout from the engine, ' Look out,' and at that time I looked and saw the fellow up in the air."

He also testifies that the bell was not ringing, and that he spoke of it immediately after the accident. He corroborates Hart and appellee in their statements as to circumstances prior to the injury, indicating that he saw and remembered what occurred. Mrs. Corcoran testifies that " There was no bell rung or whistle sounded," and that the engine " was running faster than a horse could run."

The jury saw the witnesses in the stand, heard them testify and found for appellee. There is evidence to sustain the verdict if his witnesses told the truth. The jury believe that they did. The verdict too, has the sanction of the trial judge who passed upon the application for a new trial. Under these circumstances, we are not prepared to say that

the verdict was a result of misapprehension, passion or prejudice.

Appellant urges that as the declaration avers that the defendant wantonly ran and drove its locomotive, etc., and as the jury in a special finding said that the defendant did not willfully or wantonly injure appellee, that the general verdict is controlled by the special finding.

We think not.    The declaration avers that defendant " negligently and wantonly," etc.

If appellant " negligently," etc., as alleged in declaration, caused the injury, it is liable although not caused wantonly. " The plaintiff may aver in his declaration as many grounds of recovery as he sees proper but it is not necessary to prove all that is alleged.    It is sufficient to prove enough of the negligence charged to make out a case."    Illinois Steel Co. v. Schymanowski, 162 Ill. 458.

A declaration averring two causes of action in one count may be bad on demurrer for duplicity.    But when the general issue is pleaded, the plaintiff is entitled to prove either cause of action alleged.

It is also urged that as appellant's employes were on the engine, going to their dinner, that they were at the time using appellant's engine for a private purpose, and were not engaged upon their master's business.    Chicago, B. & Q. R. R. Co. v. Magee, 60 Ill. 529.

This point is not well taken.    They were in charge of the engine, operating it upon appellant's road by virtue of their employment as servants of appellant.    If they had not been it is fair to say that they would not have used the engine for this purpose.    They would have had no control over it or opportunity to use it.    A master is responsible for the acts of his servants when done within the scope of his authority.

No outsider seeing the engine moving along the track could have told whether it was going for a train of cars or to a stand for the dinner hour.    Nor is there any testimony to indicate that it was not a part of the service of appellant to use the engine to which the crew was attached to take

the crew to their meals, in order that they might sooner return to their work. Lake S. & M. S. R. R. Co. v. Brown, 123 Ill. 162.

" If the act is done while the servant is at liberty from his service, and is pursuing his own needs exclusively, there can be no question of the master's freedom of all responsibility, even though the injury could not have been committed without the facilities afforded to the servant by his relation to his master. On the other hand, when the servant is allowed by his master to combine his own business with that of the master, or even to attend to both at substantially the same time, no mere inquiry will be made as to which business the servant was actually engaged in when a third person was injured by his negligence, but the master will be held responsible unless it clearly appears the servant could not have been directly or indirectly serving his master in the act, the negligent performance of which caused the injury." Shearman and Red. on Neg., Sec. 147.

There was no error in admitting the ordinance regulating the rate of speed of a passenger train or car within the limits of the city. The Supreme Court in East St. Louis Con. Ry. Co. v. O'Hara, 150 Ill. 580, has clearly decided that a locomotive is a " car," under the meaning of this ordinance.

It is also urged that the damages are excessive.

Appellee testifies, " I was there (in the hospital) about fifteen weeks. I paid five dollars a week for medicine and attendance. I don't know exactly what they charged for cutting off my leg. I received good care and attention by skilled nurses. Dr. De Hass was my surgeon. I had dislocation of the back, which caused spinal affection, and for a time they did not hope to save my life. I have suffered a great deal of pain. I am injured from my hip down, and my leg is very weak."

This is all the testimony in reference to injuries. Assuming it to be true, we can not say that the damages are excessive.

The judgment is affirmed.